Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| CELSO ROMERO FIGUEROA<br>*Recurrente*<br><br><br>v.<br><br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>*Recurrido* | KLRA202400616 | Revisión Administrativa procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm.:51064<br>Confinado Núm.: B7-07654<br><br>Sobre:<br>No Jurisdicción Ley Núm. 85-2024 |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderon, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 20 de febrero de 2025.

Comparece el señor Celso Romero Figueroa (señor Romero Figueroa o recurrente), miembro de la población correccional, mediante la presente *Petición de Revisión Administrativa* y nos solicita la revisión de la *Resolución* emitida el 8 de julio de 2024[1] por la Junta de Libertad Bajo Palabra (Junta o foro recurrido). En la referida *Resolución,* la Junta se declaró sin jurisdicción para atender la petición del recurrente al amparo de las disposiciones de la Ley Núm. 85-2024[2].

Por los fundamentos que proceden, ***confirmamos*** el dictamen recurrido, aunque por fundamentos distintos a los empleados por la Junta.

## I.

El señor Romero Figueroa fue sentenciado el 11 de marzo de 1996 por hechos ocurridos el 11 de marzo de 1995, luego de que un jurado lo encontrara culpable de infracciones a los siguientes delitos

---

[1] Notificada el 26 de agosto de 2024
[2] Ley Núm. 85-2024, Para enmendar el Artículo 308 de la Ley 146-2012, según enmendada y enmendar el Artículo 3 de la Ley Núm. 118 de 22 de julio de 1974.

Número Identificador

SEN2024_____

tipificados en el Código Penal de Puerto Rico de 1974, según enmendado [3]: Violación (Artículo 99), Actos Lascivos (Artículo 105), Amenazas (Artículo 153), y Escalamiento Agravado (Artículo 171). Además, se le encontró culpable de una infracción al Artículo 4 de la Ley de Armas de 1951[4].

Posteriormente, el recurrente hizo varias alegaciones de culpabilidad por hechos que se remontan al 10 de octubre de 1995, y consecuentemente, fue sentenciado el 8 de mayo de 1996 por infracciones a los siguientes delitos tipificados en el Código Penal de Puerto Rico de 1974, según enmendado[5]: Agresión Agravada (Artículo 95), Escalamiento Agravado (Artículo 171), Tentativa de Violación (Artículo 99) y Actos Lascivos (Artículo 105). Asimismo, realizó una última alegación de culpabilidad por una infracción al Artículo 4 de la Ley de Armas de 1951[6].

El 26 de octubre de 2023, el Departamento de Corrección y Rehabilitación (DCR), preparó un *Informe Breve para Referir Casos de Sentencia por Delito Grave y Menos Grave ante la Junta de Libertad Bajo Palabra*[7]. Luego de varios trámites administrativos, el 1 de noviembre de 2024, el DCR refirió el caso del señor Romero Figueroa a la Junta para evaluación y posterior determinación de si el recurrente cumplía con los requisitos para ser beneficiario del privilegio de libertad bajo palabra.

Finalmente, la Junta emitió su *Resolución* en la cual expresó, en síntesis, que carece de jurisdicción para atender el caso, debido a que el señor Romero Figueroa "fue convicto por (Violación y Actos Lascivos). Conforme la *Hoja de Control sobre Liquidación de*

---

[3] Código Penal de Puerto Rico de 1974, 1974 Leyes de Puerto Rico, pág. 449 (Derogada).
[4] Ley Núm. 17 de 19 de enero de 1951 (1951 Leyes de Puerto Rico, pág. 426) (Derogada).
[5] Código Penal de Puerto Rico de 1974, *supra*.
[6] Ley Núm. 17 de 19 de enero de 1951, *supra*.
[7] Apéndice del Recurso, págs. 12-16.

*Sentencia*[8] realizada el 15 de marzo de 2023, indica que, el delito de Violación, el peticionario lo finaliza de cumplir el 9 de octubre de 2094"[9].

El foro recurrido fundamentó su determinación en la Sección 3 de la referida Ley Núm. 85-2024, intitulada "Cláusula de Exclusión de Jurisdicción de la Junta de Libertad Bajo Palabra", la cual establece que:

> La Junta no tendrá jurisdicción para atender los casos de las personas convictas por los delitos de … violación, actos lascivos, [por lo que] no podrán beneficiarse del privilegio de libertad bajo palabra, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012[10].

Inconforme con la decisión de la Junta, el 16 de septiembre de 2024, el recurrente presentó una *Moción de Reconsideración de Concesión de Libertad Bajo Palabra*[11], la cual fue rechazada de plano. Insatisfecho aun, el señor Romero Figueroa recurre ante este foro apelativo mediante *Petición de Revisión Administrativa* para levantar el siguiente señalamiento de error:

> ERRÓ Y ABUSÓ DE SU DISCRECIÓN LA JLBP AL DECLARARSE SIN JURISDICCIÓN EN EL PRESENTE CASO FUNDAMENTÁNDOSE EN LA LEY 85-2024 CUANDO LA APLICACIÓN RETROACTIVA DE ESTA LEY RESULTA EN LA VIOLACIÓN AL PRINCIPIO CONSTITUCIONAL CONTRA LAS LEYES *EX POST FACTO* EN CLARA VIOLACIÓN AL DEBIDO PROCESO DE LEY.

El 1 de noviembre de 2024, este foro emitió una Resolución, en la cual le concedió a la Junta treinta (30) días para someter su posición sobre el recurso de revisión administrativa presentado por el recurrente. Dentro del término dispuesto, el 2 de diciembre de 2024, la Oficina del Procurador General (Procurador), en representación de la Junta solicitó término adicional para presentar el escrito. El 5 de diciembre de 2024, este Tribunal concedió al

---

[8] Apéndice del Recurso, pág. 11.
[9] Apéndice del Recurso, pág. 39.
[10] Apéndice del Recurso, pág. 39.
[11] Apéndice del Recurso, págs. 42-49.

Procurador el término solicitado. Así las cosas, el 26 de diciembre de 2024, el Procurador sometió el *Escrito en Cumplimiento de Orden.*

Así pues, contando con la comparecencia de ambas partes, procedemos a resolver.

**II.**

**-A-**

La Junta de Libertad bajo Palabra fue creada mediante la aprobación de la Ley Núm. 118 de 22 de Julio de 1974 (Ley Núm. 118)[12]. En la citada pieza legislativa, nuestra legislatura otorgó autoridad a la Junta para "decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico"[13]. Ahora bien, dicha libertad está condicionada a los numerosos requisitos establecidos en la propia ley y en su reglamento.

Es por lo anterior que el proceso de solicitud de libertad bajo palabra ante la Junta es uno riguroso, lo cual obedece al hecho de que la libertad bajo palabra es un *privilegio*, mas no un derecho del cual la persona convicta es acreedora[14].

Posteriormente, nuestra Asamblea Legislativa presentó varias enmiendas a la Ley Núm. 118 con el fin de expandir la jurisdicción de la Junta para permitir que más personas convictas pudiesen beneficiarse del privilegio de libertad bajo palabra, y así cumplir "con la política pública constitucional de la rehabilitación que debe traducirse en un andamiaje penal más humano en la implementación de las penas"[15].

Las primeras de estas enmiendas fueron implementadas mediante la aprobación de la Ley Núm. 85-2022[16], la cual modificó

---

[12] 4 LPRA sec. 1501 *et seq.*
[13] 4 LPRA sec. 1503.
[14] 4 LPRA sec. 1503c.
[15] Ley Núm. 85-2022, Para enmendar el Artículo de la Ley 146-2012, según enmendada conocida como "Código Penal de Puerto Rico", Exposición de Motivos.
[16] *Íd.*

el Artículo 3 de la Ley Núm. 118, denominado *Autoridad, Poderes y Deberes de la Junta*, y el Artículo 308 del Código Penal de Puerto Rico de 2012[17], intitulado *Términos para cualificar para consideración de la Junta de Libertad Bajo Palabra.*

En esencia, los cambios implementados establecían unos parámetros más amplios para ser considerado para el privilegio de libertad bajo palabra según los delitos y penas impuestas. Las modificaciones fueron tan favorables que la enmienda decretaba que la ley "aplica[ba] de manera retroactiva, independientemente del Código Penal o Ley Penal Especial vigente al momento de los hechos delictivos, siempre y cuando resulte favorable para la persona condenada".

Poco después de la aprobación de la Ley Núm. 85-2022, la legislatura aprobó la Ley Núm. 85-2024 con la intención de aclarar y delimitar el alcance de la ya aprobada Ley Núm. 85-2022. En esa ocasión, el legislador enfatizó en la exposición de motivos que la:

> Asamblea Legislativa, quien siempre ha sido defensora de las causas meritorias y de los derechos de la mujer, considera justo y meritorio enmendar el Artículo 308 de la Ley 146-2012, según enmendada, conocida como "Código Penal de Puerto Rico" y el Artículo 3 de la Ley Núm. 118 de 22 de julio de 1974, según enmendada, conocida como "Junta de Libertad Bajo Palabra", a los fines de **reafirmar que las personas convictas por los delitos de agresión sexual en todas sus modalidades**, agresión sexual conyugal, **violación, actos lascivos**, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, incluyendo sus tentativas, **no podrán beneficiarse de privilegio de libertad bajo palabra y otras consideraciones, <u>indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia</u>**, incluyendo los Códigos Penales de 1974, 2004 y 2012[18].

La exposición de motivos de la legislación culminó indicando que la "iniciativa aclara que **la Ley 85-2022 no aplicará retroactivamente a las personas convictas por estas actuaciones delictivas** y dispone que el referido estatuto no surtirá efecto en el cálculo de su sentencia"[19].

---

[17] 33 LPRA sec. 5416.
[18] Ley Núm. 85-2024, *supra,* Exposición de Motivos (Énfasis nuestro).
[19] *Íd.* (Énfasis nuestro).

En consecuencia, el Artículo 308 del Código Penal de Puerto Rico de 2012 quedó redactado de la siguiente manera:

> **Las personas convictas por los delitos de agresión sexual en todas sus modalidades**, agresión sexual conyugal, actos lascivos, violación, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, incluyendo sus tentativas, **no podrán beneficiarse del privilegio de libertad bajo palabra, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012. La Ley Núm. 118 de 22 de julio de 1974**, según enmendada, o el estatuto que sea aprobado en lo sucesivo, dispondrá los restantes delitos que no cualificarán para este privilegio[20].

De igual manera, el Artículo 3 de la Ley Núm. 118 quedó modificado con un lenguaje similar, que lee, en lo pertinente, como sigue:

> **[L]as personas convictas por los delitos de agresión sexual en todas sus modalidades**, incluyendo la tentativa, violación, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil **no podrán beneficiarse del privilegio de libertad bajo palabra**, **indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia,** incluyendo los códigos penales de 1974, 2004, y 2012[21].

La Ley Núm. 85-2024 culmina con una tercera sección titulada *Cláusula de Exclusión de Jurisdicción de la Junta de Libertad Bajo Palabra.* Esta cláusula introduce un lenguaje similar al de sus primeras dos secciones, pero en esta ocasión va dirigida al alcance de la propia Ley Núm. 85-2024. En lo pertinente, la cláusula establece que:

> **La Junta no tendrá jurisdicción para atender los casos de las personas convictas por los delitos de agresión sexual en todas sus modalidades**, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, incluyendo sus tentativas, no podrán beneficiarse del privilegio de libertad bajo palabra, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012[22].

La cláusula de exclusión contiene una segunda oración en la cual señala que "[*l]a Ley 85-2022 no aplicará retroactivamente a las*

---

[20] 33 LPRA sec. 5416. (Énfasis nuestro).
[21] 4 LPRA secc. 1503.
[22] Ley Núm. 85-2024, *supra.* (Énfasis nuestro).

*personas convictas por estas actuaciones delictivas, conforme a la clara intención de la Decimonovena Asamblea Legislativa de no extender este privilegio a los ofensores de la ley descritos en el párrafo anterior".*

**-B-**

El mandato constitucional contra las leyes *ex post facto*, que establece tanto el Art. I, Sección 10 de la Constitución Federal[23], así como el Art. II, Sección 12, de la Constitución del Estado Libre Asociado de Puerto Rico[24], se refiere a la prohibición de la aplicación retroactiva de una ley que agrava para el acusado su relación con el delito, la oportunidad de defenderse y la forma de cumplir una sentencia o su extensión. Es decir, para que una ley sea contraria a la cláusula contra leyes *ex post facto*, ésta debe ser de aplicación retroactiva y ser perjudicial o más onerosa para el acusado que la <u>que existía a la fecha en que se cometió el delito</u>[25].

Jurisprudencialmente se ha reconocido que la prohibición de leyes *ex post facto* promueve dos propósitos importantes. En primer lugar, asegura que los actos legislativos ofrezcan advertencia suficiente sobre sus efectos, para que individuos puedan confiar en su significado hasta tanto estos sufran un cambio explícito. Por otra parte, el mandato constitucional restringe el poder gubernamental al prohibir legislación arbitraria y vengativa[26].

Nuestro Tribunal Supremo, en armonía con los dictámenes emitidos por la Corte Suprema de los Estados Unidos (Corte

---

[23] US Const. Art. I, sec. 10, cl. 1. (Adviértase que, aunque la Constitución Federal contiene dos cláusulas de leyes *ex post facto*, una en el ámbito federal (Art. I, sec. 10, cl. 1) y otra dirigida a los estados (Art. I, sec. 9, cl. 3), la Corte Suprema de los Estados Unidos ha interpretado ambas cláusulas como si tuvieran al mismo alcance. Véase *Peugh v. United States,* 569 US 530, 532-33 (2013) y *Reetz v. Michigan,* 188 US 505, 510 (1903)).

[24] LPRA, Tomo 1.

[25] *González v. E.L.A.*, 167 DPR 400 (2006) (citando a *Weaver v. Graham,* 450 US 24 (1981). *Véase,* E. Chiesa Aponte, <u>Derecho Procesal Penal de Puerto Rico y Estados Unidos</u>, Colombia, Ed. Forum, 1992, Vol. II, sec. 19.1, págs. 545-549.

[26] Wayne R. LaFave, <u>Substantive Criminal Law</u>, Tercera Edición, 2018, sec. 2.4(a), pág. 207 (citando *a Weaver v. Graham*, 450 US 24 (1981)).

Suprema) en *Calder v. Bull* y su progenie[27], ha resuelto que existen cuatro tipos de leyes que, de aplicarse retroactivamente, infringirían la precitada disposición constitucional, a saber, las leyes que: (1) criminalizan y que castigan un acto que al ser realizado no era delito; (2) agravan un delito o lo hace mayor de lo que era al momento de ser cometido; (3) alteran el castigo al imponer una pena mayor que la fijada para el delito al momento de ser cometido, y (4) alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley al momento de la comisión del delito para castigar al acusado o al reducir el *quantum* de prueba necesario para encontrarlo culpable[28].

La Corte Suprema examinó el alcance de la tercera categoría de leyes *ex post facto* en *Peugh v. US*[29]. Allí, la Juez Ponente Sotomayor enfatizó que, aunque en *Calder v. Bull* se adoptó un arreglo de cuatro categorías de leyes que activan las protecciones de la cláusula constitucional, los casos de la Corte "no han intentado delimitar con precisión el alcance de esta frase latina, sino que le han dado sustancia mediante una acumulación de jurisprudencia"[30].

Es decir, las categorías fijadas en *Calder v. Bull* no tienen el propósito de circunscribir las protecciones de este mandato constitucional a su texto, todo lo contrario, vemos que fueron diseñadas como un marco que facilita la expansión de dichas protecciones. Sobre este particular, la Juez expresó que "nunca hemos aceptado la proposición de que una ley debe aumentar la pena máxima a la que un acusado es elegible para que esta violente la cláusula *ex post facto*"[31].

---

[27] *Beazell v. Ohio,* 269 US 167 (1992); *Collings v. Youngblood,* 497 US 37 (1990); *Calder v. Bull,* 3 US 386 (1989).
[28] *González v. E.L.A.*, 167 DPR 400 (2006); *Pueblo en el interés del menor F.R.F.,* 133 DPR 172 (1993); *Fernández v. Rivera, Jefe del Presidio,* 70 DPR 900 (1950).
[29] 569 US 530 (2013).
[30] *Íd.* en la págs. 538-539 (citas omitidas) (traducción suplida).
[31] *Íd.* en la pág. 539 (citando a *Lindsay v. Washington,* 301 US 397 (1937)) (traducción suplida).

Añadió la Curia que "la presencia de discreción no desplaza las protecciones de la cláusula ya que la corte nunca ha rechazado un planteamiento de constitucionalidad por ser la legislación escudriñada una que regule la libertad bajo palabra"[32].

Asimismo, el caso discute el análisis necesario para determinar qué constituye una alteración a un castigo puesto que la tercera categoría obliga una examinación caso a caso[33]. Es la postura de la Corte que:

> The touchstone of this Court's inquiry is whether a given change in law presents a 'sufficient risk of increasing the measure of punishment attached to the covered crimes. The question when a change in law creates such a risk is 'a matter of degree'; the test cannot be reduced to a single formula'[34].

En armonía con lo expresado, veamos algunos ejemplos de interpretaciones jurisprudenciales de la referida cláusula constitucional.

En el caso normativo *Weaver v. Graham*[35], que, aunque antecede *Calder v. Bull* es citado en *Peugh v. US,* la Corte Suprema de los Estados Unidos, por voz del Juez Marshall, examinó si un estatuto del estado de Florida, el cual alteraba la disponibilidad de créditos por buena conducta, era inconstitucional en su aplicación, toda vez que su promulgación fue posterior a la comisión de los hechos delictivos.

En esa ocasión, la Curia dictaminó que el restringir la oportunidad de ganar créditos por buena conducta constituía un castigo más oneroso al que estuvo expuesto el peticionario al momento de los hechos. Como corolario, la Corte dispuso que, "we need not determine whether the prospect of the gain time was, in some technical sense, part of the sentence to conclude that it, in

---

[32] *Íd.* en la págs. 546-547 (traducción suplida).
[33] *Íd.* nota al calce núm. 3.
[34] *Íd.* en la pág. 539 (citas omitidas).
[35] 450 US 24 (1981).

fact, is one determinant of petitioner's prison term -- and that his effective sentence is altered once this determinant is changed"[36].

En lo pertinente, la opinión puntualizó que es el efecto, y no la forma, de una ley el factor determinante para concluir si es o no *ex post facto*, pues como ya expresamos, la determinación de si una ley es *ex post facto* se limita a si es retroactiva y si tiene un efecto perjudicial sobre el individuo, por tal razón, añadió el foro que es irrelevante examinar si el cambio estatutario afecta un derecho adquirido[37].

Resulta meritorio resaltar que, para fundamentar su postura la Curia citó el caso de *Greenfield v. Scafati*, el cual fue resuelto por la Corte de Distrito para el Distrito de Massachussets[38] y confirmado sumariamente por la Corte Suprema de los Estados Unidos[39]. La Corte reiteró que:

> In *Greenfield v. Scafati, supra*, we affirmed the judgment of a three-judge District Court which found an *ex post facto* violation in the application of a statute denying any gain time for the first six months after parole revocation to an inmate whose crime occurred before the statute's enactment. There, as here, the inmate was disadvantaged by new restrictions on eligibility for release. In this vein, the three-judge court in *Greenfield* found "no distinction between depriving a prisoner of the right to earn good conduct deductions and **the right to qualify for, and hence earn, parole**. Each ... **materially 'alters the situation of the accused to his disadvantage'**"[40].

Pocos años antes de la opinión de *Weaver v. Graham,* la Corte Suprema atendió el caso de *Warden, Lewisburg Penitentiary v. Marrero*[41], en el cual examinó un estatuto federal que establecía criterios de elegibilidad para libertad bajo palabra. El alto foro razonó que:

> There are additional reasons for believing that the no-parole provision is an element of respondent's 'punishment.' First, only an unusual prisoner could be expected to think that he was not suffering a penalty when he was denied eligibility for parole ... Second, **a repealer of parole eligibility previously**

---

[36] *Íd.*
[37] *Íd.* en la pág. 32; nota al calce 13.
[38] 277 F. Supp. 644 (Mass. 1967) (el caso fue atendido por un panel compuesto por un Juez del Primer Circuito y dos jueces de distrito).
[39] 390 US 713 (1968).
[40] *Íd.* (citadas omitidas) (énfasis nuestro).
[41] 417 US 653 (1973).

> **available to imprisoned offenders would clearly present the serious question under the ex post facto clause ... of whether it imposed a 'greater or more severe punishment than was prescribed by law at the time of the . . . offense**[42].

Pese a que la Corte no tenía ante sí un planteamiento de inconstitucionalidad al amparo de la cláusula de leyes *ex post facto*, pudo anticipar cómo la eliminación retroactiva del privilegio de libertad bajo palabra pudiese presentar un castigo más oneroso para la persona convicta.

A similar conclusión arribó el Tribunal Supremo de Puerto Rico en el caso *González Fuentes v. E.L.A.*[43]. En esa ocasión, nuestro más alto foro tuvo la oportunidad de analizar si la aplicación retroactiva de un estatuto que excluía a personas convictas de asesinato del programa de supervisión electrónica violentaba sus derechos constitucionales al amparo de la cláusula contra leyes *ex post facto*.

Aunque la Curia no identificó una violación constitucional, toda vez que al momento de los hechos los convictos no eran elegibles al beneficio de supervisión electrónica, puesto que dicho programa no existía[44], sí hizo eco a lo expresado en *Weaver v. Graham,* a saber, que*:*

> Lo determinante en estos casos es si la ley que se pretende aplicar retroactivamente es más onerosa que la que estaba en vigor cuando se cometieron los hechos. A estos efectos, resulta particularmente importante examinar si, en comparación con la vieja ley, el nuevo estatuto tiene el potencial de alargar el término de reclusión que cumplirá el sujeto[45].

A su vez, el Tribunal Supremo en *González Fuentes v. E.L.A.*[46], atendió la cláusula contra leyes *ex post facto* en el contexto de

---

[42] *Íd.* en la pág. 662-663 (citas omitidas) (énfasis nuestro).
[43] 167 DPR 400 (2006).
[44] *Íd.* en la pág. 416.
[45] *Supra,* en la pág. 416.
[46] *Supra.*

libertad bajo palabra. Entendió el togado que, como corolario de lo resuelto en *Lynce v. Mathis*[47]:

> **Resulta incompatible con la protección contra leyes ex post facto aplicar retroactivamente una ley que elimina a cierto grupo de convictos la posibilidad de ser elegibles para la concesión de libertad bajo palabra** o bajo supervisión electrónica. *U.S. v. Paskow*, 11 F.3d 873 (9no Cir. 1993). Véase, además, *LaFave's, Substantive Criminal Law 2d* Sec. 2.4 (2003). **Ello se debe a que la eliminación retroactiva de esos beneficios tiene el potencial de alargar el término que el convicto habrá de cumplir en reclusión** [48].

**-C-**

Como ya examinamos, en nuestra jurisdicción se prohíbe la retroactividad de las leyes cuando estas tienen un efecto nocivo sobre la persona acusada o convicta, mas no así cuando el efecto es benigno. Esta segunda manifestación de la retroactividad legislativa se conoce como el principio de favorabilidad, heredado de la doctrina continental europea e implementado por primera vez en nuestra jurisdicción mediante el Artículo 4 del Código Penal del 1974[49].

El principio de favorabilidad "establece que, si una ley penal es aprobada con posterioridad a la comisión de unos hechos delictivos, y sus efectos resultan en un tratamiento más favorable para un acusado, esta debe aplicarse de forma retroactiva, de modo que el acusado disfrute de sus beneficios"[50].

Según el Profesor Luis Ernesto Chiesa, "el principio de favorabilidad responde a una exigencia de coherencia en la aplicación del ordenamiento jurídico"[51]. Lo anterior "obedece a que, si los hechos han dejado de ser desvalorados por el legislador, no tiene sentido que los ciudadanos sigan padeciendo las

---

[47] 519 US 433 (1997) (resulta en una aplicación *ex post facto* una ley que promulgue la eliminación retroactiva de bonificaciones por buen comportamiento que estaban vigentes al momento de la conducta delictiva).

[48] *Id.* en la pág. 409. (Énfasis nuestro).

[49] Antonio Bascuñán Rodríguez, *La Aplicación de la ley penal más favorable,* 69 Rev. Jur. UPR 29 (2000) (citado en *Pueblo v. González, infra).*

[50] *Pueblo v. Hernández*, 186 DPR 656, 673 (2012).

[51] Luis E. Chiesa Aponte, *Derecho Penal Sustantivo,* 2da Ed., pág. 59, 2013.

consecuencias de leyes que han dejado de considerarse adecuadas"[52].

Es de notar que, a diferencia de la prohibición contra leyes *ex post facto*, en nuestro ordenamiento jurídico el principio de favorabilidad no es de rango constitucional sino estatutario[53]. Quiérase decir, que la aplicación retroactiva de una ley que resultase más favorable queda dentro de la prerrogativa total de nuestra legislatura[54]. Por tanto, al ser un acto de gracia legislativa, dicha aplicación no obra de manera automática; corresponde a la legislatura establecer y delimitar su alcance[55].

Esta aplicación restrictiva del principio se debe a que hemos suplementado la doctrina continental europea con la figura anglosajona de cláusulas de reserva[56]. Es a través de estas cláusulas que nuestra legislatura impone límites al principio de favorabilidad y se distancia de la doctrina europea la cual aplica de pleno derecho.

Nuestro Tribunal Supremo atendió el tema de cláusulas de reserva en *Pueblo v. González Ramos*[57]. Allí, el alto foro local delimitó que el propósito de estas cláusulas es asegurar "la aplicación de leyes que han sido derogadas o enmendadas a aquellos hechos ocurridos durante el periodo en que estas estuvieron formalmente vigentes"[58], ***"sin importar si resultaban más favorables o desfavorables para la persona acusada"***[59].

---

[52] *Íd.* citando a Muñoz Conde & García Aran, *Derecho Penal Parte General, 6ta Ed., 2004,* nota 2, pág. 141.
[53] *Pueblo v. González Ramos,* 165 DPR 675, 686 (2005).
[54] *Íd.*
[55] *Pueblo v. Torres Cruz,* 194 DPR 53, 61 (2015)
[56] Bascuñán Rodríguez, *supra,* pág. 50. ("La jurisprudencia norteamericana no conoce el mandato de aplicación retroactiva de la ley más favorable en una forma semejante a la elaboración de la doctrina continental"); Iris Y. Rosario Nieves, *Análisis del Término: Derecho Penal Sustantivo,* 86 Rev. Jur UPR 487, 522-524 (2017) (análisis de *Pueblo v. Torres Cruz, supra*).
[57] 165 DPR 675 (2005).
[58] *Íd.* en la pág. 696.
[59] *Pueblo v. DiCristina,* 204 DPR 779, 788-789 (2020).

Para atender la controversia ante su consideración, la opinión de *Pueblo v. González Ramos*[60] se adentró en un estudio de las cláusulas de reserva del derecho anglosajón. Ello, porque según el Tribunal, las cláusulas del derecho penal puertorriqueño "tienen idéntico propósito que las cláusulas de reserva norteamericanas"[61].

En esa ocasión, la Curia se dio la tarea de auscultar si la Ley Núm. 246 del 26 de diciembre de 2014, la cual introdujo enmiendas al Código Penal de 2012[62], poseía una cláusula de reserva[63].

Es preciso recordar que, según dictan las reglas de hermenéutica, la interpretación que se le da a un estatuto comienza por su texto, porque cuando este es claro y libre de ambigüedad no debe ser menospreciado bajo el pretexto de cumplir su espíritu[64].

Ahora bien, el Alto Foro concluyó que la antedicha legislación no contenía lenguaje que pudiese identificarse como una cláusula de reserva por lo que se adentró en un análisis de intención legislativa. Basándose en la doctrina norteamericana, nuestro Tribunal Supremo precisó en *Pueblo v. González Ramos* que:

> La pregunta que deben hacerse, y contestar, los tribunales deben aplicarse una nueva ley en reconocimiento de la voluntad del legislador de derogar una ley anterior o aminorar los efectos de una pena, o si la cláusula de reserva debe entenderse a los efectos de que la intención del legislador es que la nueva ley tenga sólo efecto prospectivo, ordenando mediante la cláusula de reserva que se aplique la ley derogada o enmendada como si todavía estuviera vigente"[65].

La opinión culminó su examen de jurisprudencia federal especificando que:

> Conforme lo anteriormente expuesto *podemos concluir que la jurisprudencia del Tribunal Supremo de Estados Unidos ha reconocido, en lo referente a las cláusulas de reserva, que ellas, al neutralizar la doctrina de la supresión, impiden que una nueva ley penal que resulte ser más favorable a un acusado, convicto o sentenciado, sea aplicada de forma retroactiva, aun cuando la nueva ley derogue o enmiende una ley anterior ...* Conforme a ello, la intención legislativa deberá

---

[60] *Supra.*
[61] 165 DPR en la pág. 696.
[62] 33 LPRA sec. 5001 *et seq,*
[63] *Íd.* en las págs. 62-65.
[64] Véase *Vargas v. Retiro*, 159 DPR 248, 270 (2003); *Irizarry v. J&J Cons. Prods. Co.,* (P.R.), Inc., 150 DPR 155 (2000).
[65] *Supra,* en la pág. 689 (énfasis nuestro).

prevalecer siempre y cuando ésta no sobrepase los límites constitucionales[66].

Las cláusulas de reserva también fueron objeto de controversia en *Pueblo v. Torres Cruz*[67]. Una década después de *Pueblo v. González Ramos*[68], nuestro más Alto Foro igualmente interpretó la controversia a través del crisol del derecho anglosajón, reiterando lo ya resuelto sobre un análisis regido por la intención legislativa.

### III.

A la luz de la normativa expuesta, nos corresponde determinar si la Junta erró al declararse sin jurisdicción. Veamos.

El recurrente señala que el estado de derecho al momento de ser sentenciado en el 1996 no excluía del beneficio de libertad bajo palabra a las personas convictas de violación y actos lascivos, por tanto, negarle tal beneficio bajo las disposiciones de una ley aprobada en el 2024 violenta el principio constitucional contra la aplicación *ex post facto* de una legislación penal. Lo anterior, le lleva a razonar que, la exclusión diseñada en la Ley Núm. 85-2024 posee el efecto de agravar el castigo, imponiéndole así una pena mayor a la establecida al momento de ser sentenciado.

Por su parte, el Procurador, esgrime que la Junta no erró al declararse sin jurisdicción para atender el presente caso, aunque a su entender, dicha falta de jurisdicción se debe, no a la cláusula de exclusión de la Ley Núm. 85-2024, sino a su cláusula de reserva.

Como parte de su análisis, el Procurador acepta que, por los hechos específicos del caso de epígrafe, la cláusula de exclusión estatuida en la tercera sección de la Ley Núm. 85-2024 sí activaría la protección contra leyes *ex post facto*. Ello, si fuera de aplicación los cálculos de la Ley Núm. 85-2024, lo cual a su entender no ocurre

---

[66] *Íd.* en las págs. 695-696.
[67] 194 DPR 53, 62 (2015).
[68] *Supra.*

aquí, debido a la cláusula de reserva incorporada a la pieza legislativa.

Sobre ese particular, el Procurador nos arguye que la segunda oración de la cláusula de exclusión funge como una cláusula de reserva, ya que, según adelantamos, dicha oración específica que *"[l]a Ley 85-2022 no aplicará retroactivamente a las personas convictas por estas actuaciones delictivas, conforme a la clara intención de la Decimonovena Asamblea Legislativa de no extender este privilegio a los ofensores de la ley descritos en el párrafo anterior"*[69].

Finalmente, el Procurador nos señala que la evaluación de la petición del recurrente se rige por el estado de derecho vigente a la fecha de la comisión de los hechos, el cual establece que el recurrente sería elegible al privilegio de libertad bajo palabra en el año 2075.

Luego de un análisis ponderado de la Ley Núm. 85-2024, el derecho aplicable a los hechos delictivos y los principios doctrinales levantados por ambas partes, confirmamos la determinación de la Junta, aunque por un fundamento distinto.

Comencemos nuestro análisis atendiendo el argumento de inconstitucionalidad levantado por el recurrente. La función de los tribunales como últimos intérpretes de la ley está limitada por la doctrina de autolimitación judicial[70]; *"Por ello, cuando se cuestiona la validez de una ley o se arroja dudas sobre su constitucionalidad, primero debemos determinar si hay una interpretación razonable que permita soslayar la cuestión constitucional[71]".* Conforme con esos principios, no entraremos en los méritos de un análisis sobre leyes

---

[69] Ley Núm. 85-2024, *supra,* en la sección 3.
[70] *Autoridad de los Puertos de Puerto Rico v. Total Petroleum Puerto Rico Corp. et al.*, 210 DPR 16, 29 (2022), *Senado de PR v. ELA,* 203 DPR 62, 86 (2019); *E.L.A. v. Aguayo,* 80 DPR 552, 595 (1958).
*Autoridad de los Puertos de Puerto Rico v. Total Petroleum Puerto Rico Corp. et al.,* pág. 29, citando a *Brau, Linares v. ELA et als.,* 190 DPR 315, 337 (2014) y *ELA v. Northwestern Selecta,* 185 DPR 40, 71 (2012).

*ex post facto* ya que, regidos por la doctrina de autolimitación judicial, resolveremos la presente controversia bajo una interpretación razonable de la ley cuestionada por el recurrente.

Considerado en primera instancia el argumento del señor Romero Figueroa, regresemos a los argumentos presentados por el Procurador, entre estos, la inaplicabilidad del principio de favorabilidad, creado por la Ley Núm. 85-2022, por existir la cláusula de reserva que fue incorporada a la Ley Núm. 85-2024, error administrativo cometido por DCR al realizar el cómputo del recurrente y que es improcedente aplicar la doctrina *ex post facto.*

Luego de examinar la sección 3 de la referida ley, podemos colegir que el lenguaje utilizado en la segunda oración de la sección es uno vago.

No obstante, nuestro Tribunal Supremo ha reiterado lo señalado en *Pueblo v. Tribunal Superior*, 98 DPR 750, 751-752 (1970): "la dificultad en determinar si las ofensas marginales caen dentro del significado del lenguaje atacado por vago no significa que automáticamente el estatuto es inconstitucional por ser indeterminado" [ya que] "no se requieren normas imposibles de especificación. La prueba es **si el lenguaje da un aviso definido con respecto a la conducta proscrita <u>de acuerdo al significado y práctica comunes</u>**"[72]. En ese examen debe considerarse si una persona de inteligencia común puede entender, sin tener que adivinar, el tipo y ámbito de la conducta prohibida, así como el sujeto a quien está dirigida[73].

El Alto Foro reconoció expresamente esta dificultad en *Pueblo v. Tribunal Superior*, 81 DPR 763, 788 (1960). Señaló en esa ocasión que "[n]o debe caerse en la superficialidad de creer que una ley penal

---

[72] *Jordan v. George*, 341 U.S. 223 (1951).
[73] *Pueblo v. Hernández Colón*, 118 DPR, en la pág. 901, que cita con aprobación a Dora Nevares Muñiz, *Derecho Penal Puertorriqueño-Parte General*, ed. 1983, págs. 90-92. Véase, además, *Pueblo v. Arandes de Celis*, 120 DPR 530, 538 (1988), y *Pueblo v. Figueroa García,* 140 DPR 225, 231 (1996).

es nula por defecto de vaguedad debido a que requiera interpretación". Veamos.

De una lectura integrada de la totalidad de la legislación, incluyendo su exposición de motivos[74], podemos colegir que, aunque no ejecutada con suma claridad y precisión, entendemos que la intención del legislador fue excluir de los cálculos de la Ley Núm. 85-2022 a personas como el señor Romero Figueroa que están extinguiendo sentencias por delitos contra la indemnidad sexual.

Como vemos, la Ley Núm. 85-2024 modifica el alcance de la tercera sección de la Ley Núm. 85-2022, que expresamente reconocía la aplicación retroactiva de los nuevos cálculos, sin limitaciones concernientes a la naturaleza de los delitos imputados.

En esencia, el estado de derecho actual es el siguiente: las personas que fueron convictas por los delitos de agresión sexual, en todas sus modalidades, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, incluyendo sus tentativas, no podrán beneficiase de los cálculos provechosos presentados en la Ley Núm. 85-2022. Lo anterior, pues dichos cálculos fueron una obra de gracia legislativa que puede libremente regularse como el legislador entienda apropiado.

---

[74] Resaltamos que la Ley 85-2024 no posee historial legislativo. Fíjese que el ahora Presidente del Senado, Hon. Thomas Rivera Schatz, emitió un Voto Explicativo donde resaltó el trámite deficiente de la medida al aprobar el Proyecto de la Cámara Núm. 2106 ante la consideración de la Asamblea Legislativa, a saber: *"Aunque reconocemos y favorecemos el fin loable y apremiante que persigue la pieza legislativa en protección de la seguridad de las víctimas, **no podemos obviar el trámite deficiente que se le dio a la misma**. Y es que, el P. de la C. 2106 fue descargado en ambos cuerpos legislativos, perdiendo así la oportunidad de discutir y evaluar responsablemente un asunto prioritario para todos como lo es la seguridad de nuestro país y el funcionamiento adecuado de los organismos que componen el sistema de justicia criminal. No debemos perder de perspectiva que el beneficio de libertad bajo palabra es un privilegio que se le otorga a un confinado de génesis legislativo, dirigido a fomentar su rehabilitación y el cual deberá ser otorgado velando el mejor interés de la sociedad. Por lo que, **se desaprovechó la coyuntura para aunar esfuerzos que permitan evaluar y reformar nuestro ordenamiento penal, mediante el insumo y la colaboración de entidades con el expertise en asuntos penales**. Esto, con el fin de lograr una eficaz administración de la justicia criminal y devolver a la ciudadanía la seguridad que tanto merece. Por tanto, y a tenor con lo anteriormente expresado, los senadores suscribientes emitimos este voto explicativo a favor del P. de la C. 2106".* P. de la C. 2106 de 21 de mayo de 2024, Séptima Sesión Ordinaria, 19.ª Asamblea Legislativa, pág. 39228-39229.

Enfatizamos que estamos examinando la tercera sección de la Ley Núm. 85-2024, mas no las enmiendas que esta introdujo al Código Penal y la ley habilitadora de la Junta en sus primeras dos secciones, pues ambos cuerpos legislativos son inaplicables al recurrente.

Ahora bien, el hecho de que el legislador haya ejercido su autoridad para limitar la aplicación de los nuevos cálculos, no significa que le haya eliminado la posibilidad al recurrente de solicitar el beneficio de libertad bajo palabra, pues como señalamos, en el derecho aplicable, dicha acción queda fuera de la prerrogativa legislativa.

La exclusión solo significa que, en el caso específico del señor Romero Figueroa, el beneficio tendrá que solicitarse y evaluarse al amparo de las disposiciones del Código Penal de 1974 y la ley habilitadora de la Junta de Libertad Bajo Palabra, según emendadas hasta la fecha de los hechos delictivos.

En el caso de autos, los hechos delictivos por los cuales el recurrente se encuentra recluido en una institución penal se cometieron el 11 de marzo de 1995 y 10 de octubre de 1995, por tanto, el Código Penal aplicable era el código del 1974.

Examinando el estado de derecho vigente en el 1995, notamos que el Código Penal de 1974 no contenía un artículo análogo al Artículo 308 del Código Penal de 2012[75], el cual establece los términos para cualificar para la consideración de la Junta de Libertad Bajo Palabra, ya que el primer artículo de dicha naturaleza fue presentado en el Código Penal de 2012.

Luego de un estudio ponderado del Código Penal de 1974 (derogado), solo identificamos una ocasión donde el estatuto excluye delitos del beneficio de libertad bajo palabra. Nos referimos al

---

[75] 33 LPRA secc. 5416.

Artículo 62 sobre *Efectos de la Reincidencia,* cuyo inciso (b) establecía que en el caso de reincidencia agravada donde la pena fuese fijada en años naturales, "el convicto quedará bajo la jurisdicción de la Junta de Libertad Bajo Palabra cuando haya cumplido la mitad de la pena fija impuesta"[76].

En el 1993, el Artículo 62 sufrió una enmienda mediante la cual se le añadió al inciso (b) el siguiente lenguaje: "salvo en los casos en que el delito cometido sea cualquiera de los siguientes delitos o su tentativa: … actos lascivos …"[77]. Puesto que en el caso que nos ocupa solo hubo reincidencia por escalamiento agravado[78], más no reincidencia agravada por el delito de actos lascivos[79], es evidente que la exclusión del Artículo 62 es inaplicable al caso de marras.

Nos resulta meritorio resaltar que del historial del artículo que se encuentra en la colección de Leyes de Puerto Rico Anotadas se menciona que en el 1993 también se enmendó el inciso (c) sobre *Efectos de la Reincidencia Habitual* para suprimir la oración relativa a la jurisdicción de la Junta de Libertad Bajo Palabra[80].

Considerando que el andamiaje de la Junta existía previo al Código Penal del 1974 —y al momento de las enmiendas del 1993— y que el legislador expresamente excluyó las personas con una determinación de reincidencia agravada del beneficio de libertad bajo palabra, es indudable que el legislador tuvo oportunidad de

---

[76] 33 LPRA sec. 3302 (Derogada).

[77] *Íd.*

[78] Apéndice del Recurso, pág. 10; Nótese que el inciso (a) del Artículo 61, donde se establecen los efectos de la reincidencia simple, no se menciona la Junta de Libertad Bajo Palabra ni se excluyen los reincidentes del beneficio de libertad bajo palabra.

[79] Incluso, no se alegó reincidencia por el delito de actos lascivos, Apéndice del recurso, pág. 7; 33 LPRA sec. 3301 (Derogada) (El inciso (1) establece que "[h]abrá reincidencia cuando el que ha sido convicto por delito grave incurre nuevamente en otro delito grave", mientras que el inciso (2) dicta que "[h]abrá reincidencia agravada cuando el que ha sido convicto anteriormente por dos (2) o más delitos graves cometidos en tiempos diversos e independientes unos de otros incurre nuevamente en otro delito grave").

[80] *Íd.*

hacer una exclusión semejante referente a las determinaciones de reincidencia simple, más optó por no hacerlo.

Asimismo, tuvo la oportunidad de excluir de plano los delitos contra le indemnidad sexual, independientemente de la existencia de reincidencias, como ocurrió con la Ley Núm. 85-2024, pero dicha prohibición no obra del texto del Código del 1974 (derogado).

Siendo el Artículo 62 la única disposición en el Código Penal de 1974 relativa a libertad bajo palabra, concluimos que nada en dicho cuerpo legislativo priva a la Junta de atender en los méritos el caso del recurrente. Ahora, procedemos a examinar si la ley habilitadora de la Junta, al momento de los hechos, poseía algún impedimento jurisdiccional.

De manera similar a lo ocurrido en el código penal, el Artículo 3 de la Ley de la Junta de Libertad Bajo Palabra, según enmendado hasta el 1995[81], que establece la *Autoridad, Poderes y Deberes de la Junta,* tampoco excluía al señor Romero Figueroa de beneficiarse del privilegio de libertad bajo palabra.

El texto del artículo se limitaba a establecer que la Junta podría decretar la libertad de una persona convicta cuando esta haya cumplido la mitad de la sentencia fijada, "excepto cuando la persona haya sido convicta por asesinato en primer grado, en cuyo caso la Junta adquirida jurisdicción cuando la persona haya cumplido veinticinco (25) años naturales" de su sentencia[82].

Es decir, aun estableciendo estándares más rigurosos para el delito de asesinato, la ley no contemplaba una prohibición absoluta para que un convicto pudiese ser evaluado por la Junta. En virtud de ello, nos vemos obligados a concluir que la Ley Núm. 118[83],

---

[81] 4 LPRA sec. 1503.
[82] 4 LPRA sec. 1503 (1994) (Después de la enmienda presentada por la Ley Núm. 33 de 27 de julio de 1993, el artículo no fue modificado hasta dos años después de los hechos, mediante la Ley Núm. 28 de 1 julio de 1997, por tanto, el texto del tomo de LPRA de 1994 era el lenguaje vigente para el 1995).
[83] *Íd.*

tampoco excluía al señor Romero Figueroa del privilegio de libertad bajo palabra para el año 1995.

De todo lo anterior se desprende que el señor Romero Figueroa sí puede ser considerado al privilegio de libertad bajo palabra, debido a que el estado de derecho al momento de los hechos delictivos contemplaba la posibilidad de solicitar el privilegio. Sin embargo, los cálculos a utilizarse para determinar su elegibilidad no pueden ser los de la Ley Núm. 85-2024[84].

Al llegar a la anterior conclusión, evitamos emplear un análisis de leyes *ex post facto* ya que, según las normas de autolimitación judicial, no debemos adentrarnos en un análisis de inconstitucionalidad si existe la posibilidad de atender la controversia bajo otros fundamentos.[85]

Además, destacamos que la Junta posee un conocimiento especializado, por lo cual su determinación merece deferencia. *Torres Santiago v. Depto. Justicia,* 181 DPR 969, 1003 (2011). Esta normativa contempla que las instituciones correccionales "están en mejor posición para resolver las controversias surgidas en torno a los asuntos que le fueron encomendados por ley". *Cruz Negrón v. Administración de Corrección, supra*, págs. 355-356.

Por lo cual, el error alegado por la parte recurrente no fue cometido.

**IV.**

Por los fundamentos expresados, los cuales hacemos formar parte de este dictamen, ***confirmamos*** la decisión de la Junta de Libertad Bajo Palabra, aunque por los fundamentos antes expuestos.

Notifíquese.

---

[84] Ello no significa que no pueda beneficiarse de otros cálculos.
[85] *Véase E.L.A. v. Aguayo,* 80 DPR 552 (1958).

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El juez Adames Soto concurre sin voto escrito.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones